**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norstan, Inc., d/b/a Black Box Network Services; Black Box Network Services Employee Health Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>Jennifer N. Lancaster, in her capacity as Personal Representative of the Estate of James Joseph Lancaster, et al.,<br><br>Defendants. | No. CV-12-481-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunctive Relief. (Doc. 4). For the reasons discussed below, the application for emergency relief as it applies to the Estate's claims against the hospital has been settled and is moot. The application is denied without prejudice as to the remaining claims.

**BACKGROUND**

This case involves three actions related to the health care costs of decedent Joseph Lancaster: the instant action in this Court, a state court tort action, and a state court probate action regarding Lancaster's Estate. Joseph Lancaster was a member of an ERISA health care plan (the "Plan") that he obtained through his employer, Plaintiff Norstan, Inc. (Doc. 4 at 2). On May 15, 2009, Mr. Lancaster underwent a medical procedure at Banner Heart Hospital and suffered injury, resulting in his total incapacitation. (*Id.* at 6). He was in a near vegetative

state for months. (Doc. 20 at 2). On January 20, 2010, a medical malpractice suit was filed on his behalf by his guardian *ad litem* in Maricopa County Superior Court (the "state court tort action"). (Doc. 20 at 2). On September 7, 2010, Mr. Lancaster died. (Doc. 4 at 6). Between May 11, 2009 and Lancaster's death, the Plan paid $1,144,862 for medical services provided to him.

On December 16, 2010, an amended complaint was filed in the state court tort action. (Doc. 20-2, Ex. 1). The amended complaint apparently asserted survivor and wrongful death claims on behalf of Joseph Lancaster's Estate, parents, and four adult children. That complaint names Jonathon A. Feuer, M.D., Valley Anesthesiology Consultants, Ltd., and the Banner Heart Hospital as defendants. (*Id.*). At some point, all plaintiffs in the state court tort action, including the Estate, entered into a settlement agreement. That agreement apparently purports to extinguish plaintiffs' claims against the Hospital, but does not affect the plaintiffs' claims against Feuer or Valley Anesthesiology. On November 17, 2011, the Estate moved for the *probate court's* approval of the Estate's dismissal as a plaintiff in the tort action. (Doc. 4, Ex. 2-C). On December 11, 2011, Norstan filed an opposition to the Estate's motion. (Doc. 20-2, Ex. 2). In its opposition, Norstan contends that the probate court should deny the motion to approve dismissal because "[u]nder the terms of the Plan, the Decedent and his Estate have assigned to the Plan all rights of recovery against third parties to the extent of reasonable value of services and benefits the Plan provided, [and have] agreed to cooperate with the Plan in protecting its legal rights as subrogee to the rights of the Decedent and his Estate." (Doc. 20-2, Ex. 2 at 2). The probate court has yet to rule on the estate's motion.

On March 8, 2012, Plaintiffs Norstan and Black Box Network Services Employee Health Plan filed the Complaint in the instant action, bringing a claim against the Estate for breach of contract. (Doc. 1). The Complaint also brings claims against the Estate and the attorneys that represent the estate in the state court actions for declaratory judgment pursuant to 29 U.S.C. § 1132(a)(3), constructive trust, and injunctive relief. (*Id.*). Also on March 8, Plaintiffs filed the instant Motion for Temporary Restraining Order and Preliminary

- 2 -

Injunctive Relief. (Doc. 4). In this motion, Plaintiffs ask the Court to 1) enjoin the Estate from dismissing itself as a party in the state court action; and 2) order the preservation and placement in trust of the Plan's reimbursement interest of $1,144,862 from any settlement that the Estate and/or its representative and attorneys may receive from the state court action. (Doc. 4). The Court held a hearing on the matter on March 27, 2012.

## DISCUSSION

### I.   Legal Standard

A plaintiff must establish four elements in order to be granted a preliminary injunction, including "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat't Res. Def. Council,* 555 U.S. 7, 20 (2008), *see* FED. R. CIV. P. 65. The Ninth Circuit considers all of the elements except for irreparable injury using a sliding scale approach, where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The element of irreparable injury is not subject to balance; the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 23 (emphasis in original).

### II.   Legal Analysis

#### A.   Likelihood of Success

Plaintiffs contend that they are likely to succeed on the merits of their claim for declaratory relief under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) states that:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary [of an ERISA health care plan] (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiffs are apparently the fiduciaries of the Plan. Accordingly, Plaintiffs may bring suit

1 against the Estate to obtain the "appropriate equitable relief" to enforce the terms of the Plan.
2 *See id.* The Supreme Court has held that "appropriate equitable relief" includes the
3 enforcement of any subrogation clause an Erisa plan contains. *See Sereboff v. Mid Atlantic*
4 *Medical Services*, 547 U.S. 356, 368 (2006) (stating that the enforcement of a subrogation
5 clause in an ERISA plan constitutes "equitable relief" under Section 1132(a)(3) because it
6 is indistinguishable from the enforcement of an equitable lien). Such subrogation must,
7 however, be sought from a "specifically identifiable fund" that is "within the possession and
8 control" of the Estate. *See id.* at 362–63. Plaintiffs cannot, under Section 1132(a)(3), bring
9 a general damages claim for breach of contract against the estate. *See id.*

10 The Plan's subrogation clause is contained in a document entitled the Plan Document.
11 (Doc. 4, Ex. 1-A). This clause states that if a "covered person"—defined as Lancaster or any
12 person acting on his behalf, such as his estate or attorney—"receives a benefit payment from
13 the plan for an injury caused by a third party, and the covered person later receives any
14 payment for that same condition or injury from another person, organization or insurance
15 company, the plan has the right to recover any payments made by the plan to the covered
16 person." (Doc. 4, Ex. 1-A at 88). The Plan Document further states that the Plan is entitled
17 to "[f]irst dollar recovery," or in other words that the Plan is to "be reimbursed from any
18 recovery before any other existing claims or payments to any other persons, including . . .
19 attorney fees." (*Id.*). And the Plan Document states that "'recovery' is not limited to a court
20 award [but] includes any award . . . . [or] settlement." (*Id.*). It appears, therefore, that under
21 the Plan Document, the Plan is entitled to reimbursement for any recovery obtained by the
22 Estate for health care expenses incurred by Lancaster—capped at the $1,144,820 paid by the
23 Plan towards Lancaster's health costs.

24 **B.    Irreparable Injury**

25 Plaintiffs also contend that they will suffer irreparable injury unless the Court 1)
26 enjoins the Estate from dismissing itself as a party in the state court tort action; and 2) orders
27 the preservation and placement in trust of $1,144,862 of any settlement that the Estate and/or
28 its representative and attorneys have recovered from the state court action. (Doc. 4).

- 4 -

1 Plaintiffs first contend that they will be irreparably harmed if the Court declines to
2 enjoin the Estate from dismissing itself as a party in the tort action. The Estate, however, has
3 a pending motion in the probate court, which seeks that court's approval for the Estate's
4 dismissal of itself in the state court tort action. (Doc. 4, Ex. 2-C). Accordingly, the Estate is
5 not likely to dismiss itself in the tort action unless the probate court grants the Estate
6 approval to do so. And should it receive such approval, the Estate would still have to take the
7 step of moving for such dismissal in the tort action. Plaintiffs have already appeared in the
8 probate court and have submitted a motion there opposing the Estate's motion for approval.
9 (Doc. 20-2, Ex. 2). Accordingly, it is possible that the probate court will resolve the issue.
10 Moreover, even assuming the probate court were not to rule in the Plan's favor, the parties
11 may be able to negotiate a solution that permits the Plan to pursue its remaining claims in the
12 state tort action or take other steps that would alleviate the need for emergency relief. In
13 short, Plaintiffs have not yet been able to demonstrate that they will be irreparably harmed
14 if the Court declines to enjoin the Estate from dismissing itself as a party in the tort action.

15 In their motion, Plaintiffs also request that the Court place in trust any settlement
16 received by the Estate and its attorneys from the tort action. This request, however, was
17 rendered moot by a stipulation entered into by the Parties during the March 27, 2012 motion
18 hearing. At the hearing, Plaintiffs attested that all funds from the settlement between the
19 Hospital and all plaintiffs in the state court tort action have been placed into an escrow fund.
20 The Parties further stipulated that "no amounts will be paid out of that fund absent the
21 approval of [Defendants] or the Court." This stipulation renders moot Plaintiffs' request that
22 the Court order the placement of the funds in trust.

## CONCLUSION

24 Plaintiffs' request that the Court enjoin the Estate from dismissing itself as a party in
25 the state court action is denied without prejudice because Plaintiffs have, thus far, failed to
26 establish irreparable harm. Plaintiffs' request that the Court order that the settlement proceeds
27 from the state court action be placed in trust is denied as moot given the Parties' stipulation
28 at the TRO hearing.

**IT IS THEREFORE ORDERED** that Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. 4) is **denied in part without prejudice**.

DATED this 29th day of March, 2012.

*A. Murray Snow*
/G. Murray Snow
United States District Judge