**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norstan, Inc., d/b/a Black Box Network Services; Black Box Network Services Employee Health Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>Jennifer N. Lancaster, in her capacity as Personal Representative of the Estate of James Joseph Lancaster, et al.,<br><br>Defendants. | No. CV-12-481-PHX-GMS<br><br>**TEMPORARY RESTRAINING ORDER** |

Pending before the Court is Plaintiffs' Renewed Application for Temporary Restraining Order and Preliminary Injunctive Relief. (Doc. 37). For the reasons discussed below, the application for emergency relief is granted in part.

**BACKGROUND**

This case involves three actions related to the health care costs of decedent Joseph Lancaster: the instant action in this Court, a state court tort action, and a state court probate action regarding Lancaster's Estate. Joseph Lancaster was a member of an ERISA health care plan (the "Plan") that he obtained through his employer, Plaintiff Norstan, Inc. (Doc. 4 at 2). On May 15, 2009, Mr. Lancaster underwent a medical procedure at Banner Heart Hospital and suffered injury, resulting in his total incapacitation. (*Id*. at 6). He was in a near vegetative state for months. (Doc. 20 at 2). On January 20, 2010, a medical malpractice suit was filed

on his behalf by his guardian *ad litem* in Maricopa County Superior Court (the "state court tort action"). (Doc. 20 at 2). On September 7, 2010, Mr. Lancaster died. (Doc. 4 at 6). Between May 11, 2009 and Lancaster's death, the Plan paid $1,144,862 for medical services provided to him.

On December 16, 2010, an amended complaint was filed in the state court tort action. (Doc. 20-2, Ex. 1). The amended complaint apparently asserts survivor and wrongful death claims on behalf of Lancaster's Estate, parents, and four adult children—Jennifer, Candice, Christy, and Joseph Lancaster. Jennifer has been appointed as the Estate's Personal Representative and is therefore involved in the state court action in both an individual and representative capacity. The complaint names Jonathan A. Feuer, M.D., Valley Anesthesiology Consultants, Ltd., and the Banner Heart Hospital as defendants. (*Id.*). At some point, all plaintiffs in the state court tort action, including the Estate, entered into a settlement agreement (the "First Settlement"). Although the terms of the First Settlement have not been provided to the Court, it apparently purports to extinguish the plaintiffs' claims against the Hospital, but does not affect their claims against Feuer or Valley Anesthesiology.

On March 8, 2012, Plaintiffs Norstan and Black Box Network Services Employee Health Plan filed the Complaint in the instant action, bringing a claim against the Estate for breach of contract. (Doc. 1). The Complaint also brings claims against the Estate and its counsel for a declaratory judgment pursuant to 29 U.S.C. § 1132(a)(3), constructive trust, and injunctive relief. (*Id.*). Also on March 8, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief. (Doc. 4). In this motion, Plaintiffs asked the Court to 1) enjoin the Estate from dismissing itself as a party with regards to the remaining claims in the state court action; and 2) order the preservation and placement in trust of the Plan's reimbursement interest of $1,144,862 from any settlement that the Estate and/or its representative and attorneys may receive from the state court action. (Doc. 4). The Court held a hearing on the matter on March 27, 2012.

On March 29, 2012, the Court denied Plaintiffs' motion for TRO without prejudice, holding that Plaintiffs had failed to establish irreparable harm. (Doc. 29). Plaintiffs had

1  argued that they would be irreparably harmed unless the Court enjoined the Estate from
2  dismissing itself as a party in the state court tort action. The Court held, however, that the
3  Estate had not shown that it would suffer irreparable harm absent such an injunction, noting
4  that the probate court had not yet granted the Estate's motion for leave to dismiss itself in the
5  tort action. (Doc. 29 at 5). Plaintiffs had further argued that they would suffer irreparable
6  harm unless the Court placed the proceeds from the First Settlement in trust. At the hearing
7  regarding the TRO, however, Defendants attested that all funds from the First Settlement had
8  been placed into an escrow fund and that "no amounts will be paid out of that fund absent
9  the approval of [Plaintiffs] or the Court." The Court held, therefore, that Plaintiffs' request
10 that the funds be placed in trust was moot. (Doc. 29 at 5).

11 On May 11, 2012, Plaintiffs filed a Renewed Application for Temporary Restraining
12 Order. (Doc. 37). This Renewed Application states that on May 2, 2012, Defendants notified
13 Plaintiffs that the remaining claims in the tort action—the claims against Feuer and Valley
14 Anesthesiology—had been settled by the plaintiffs in the state court tort action (the "Second
15 Settlement"). Plaintiffs claim that they "have been and/or will be irreparably harmed" by this
16 Second Settlement. Accordingly, they request that the Court enjoin Defendants from settling
17 the tort action without Plaintiffs' consent or from disbursing any settlement proceeds related
18 to the tort action. (*Id*.). In addition, Plaintiffs state that the probate court has now granted the
19 Estate leave to dismiss itself in the tort action. Plaintiffs accordingly renew their request that
20 the Court enjoin Defendants from dismissing the Estate as a party in the state court tort
21 action. (Doc. 37 at 2). The Court held a hearing regarding Plaintiffs' Renewed Application
22 on May 30, 2012.

## DISCUSSION

### I. Legal Standard

25 A plaintiff must establish four elements in order to be granted a preliminary
26 injunction, including "that he is likely to succeed on the merits, that he is likely to suffer
27 irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
28 favor, and that an injunction is in the public interest." *Winter v. Nat't Res. Def. Council,* 555

U.S. 7, 20 (2008), *see* FED. R. CIV. P. 65. The Ninth Circuit considers all of the elements except for irreparable injury using a sliding scale approach, where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The element of irreparable injury is not subject to balance; the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 23 (emphasis in original).

**II.     Legal Analysis**

Plaintiffs contend that they are likely to succeed on the merits of their claim for declaratory relief under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) states that:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary [of an ERISA health care plan] (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiffs are apparently the fiduciaries of the Plan. Accordingly, Plaintiffs may bring suit against the Estate to obtain the "appropriate equitable relief" to enforce the terms of the Plan. *See id.* The Supreme Court has held that "appropriate equitable relief" includes the enforcement of any subrogation clause an Erisa plan contains. *See Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356, 368 (2006) (stating that the enforcement of a subrogation clause in an ERISA plan constitutes "equitable relief" under Section 1132(a)(3) because it is indistinguishable from the enforcement of an equitable lien). Such subrogation must, however, be sought from a "specifically identifiable fund" that is "within the possession and control" of the Estate. *See id.* at 362–63. Plaintiffs cannot, under Section 1132(a)(3), bring a general damages claim for breach of contract against the estate. *See id.*

The Plan's subrogation clause is contained in a document entitled the Plan Document. (Doc. 4, Ex. 1-A). This clause states that if a "covered person"—defined as Lancaster or any person acting on his behalf, such as his estate or attorney—"receives a benefit payment from the plan for an injury caused by a third party, and the covered person later receives any

- 4 -

1 payment for that same condition or injury from another person, organization or insurance
2 company, the plan has the right to recover any payments made by the plan to the covered
3 person." (Doc. 4, Ex. 1-A at 88). The Plan Document further states that the Plan is entitled
4 to "[f]irst dollar recovery," or in other words that the Plan is to "be reimbursed from any
5 recovery before any other existing claims or payments to any other persons, including . . .
6 attorney fees." (*Id.*). And the Plan Document states that "'recovery' is not limited to a court
7 award [but] includes any award . . . . [or] settlement." (*Id.*). It appears, therefore, that under
8 the Plan Document, the Plan is entitled to reimbursement for any recovery obtained by the
9 Estate for health care expenses incurred by Lancaster—capped at the $1,144,820 paid by the
10 Plan towards Lancaster's health costs.

11 **B.     Irreparable Injury**

12 Plaintiffs contend that they will suffer irreparable injury unless the Court enters three
13 separate injunctions. First, Plaintiffs argue that the Estate should be enjoined from settling
14 the tort action without Plaintiffs' consent. (Doc. 37 at 2). Second, Plaintiffs contend that
15 Defendants should be enjoined from disbursing any settlement proceeds related to the tort
16 action. (*Id.*). Third, Plaintiffs argue that the Estate should be enjoined from dismissing itself
17 as a party in the tort action. (*Id.*).

18 Plaintiffs first argue that the Estate should be enjoined from accepting the Second
19 Settlement. It appears that the Estate has entered into an agreement with Feuer and Valley
20 Anesthesiology to settle its remaining claims in the tort action. (Doc. 37-1, Ex. 1, ¶ 6). Under
21 the terms of the Plan, however, the Estate agreed that it "will not accept any settlement that
22 does not fully compensate or reimburse the plan without its written approval." (Doc. 4, Ex.
23 1-A at 89). Plaintiffs have not approved the Second Settlement, and have produced evidence
24 that this settlement will not fully compensate the Plan. Moreover, should the Estate
25 extinguish its claims against Feuer and Valley Anesthesiology, the Plan may be rendered
26 incapable of ever obtaining a recovery. Plaintiffs have therefore adequately demonstrated a
27 likelihood of irreparable harm unless the Estate is enjoined from accepting the Second
28 Settlement.

1    Plaintiffs next argue that the Defendants should be enjoined from disbursing any settlement proceeds related to the tort action. As noted above, the Parties stipulated at their March 27, 2012 TRO hearing that the funds from the First Settlement will remain in escrow pending the outcome of this case. The Parties have now likewise stipulated that Defendants will place in escrow any funds they may receive relating to the Second Settlement. (*See* Doc. 38 at 2). Plaintiffs' request that the Court enjoin Defendants from disbursing any settlement proceeds is therefore moot.

Finally, Plaintiffs contend that the Estate should be enjoined from dismissing itself as a party in the state court tort action. The Estate agreed via the Plan document "[t]o cooperate with the plan in protecting its legal rights to subrogation and reimbursement." (Doc. 4, Ex. 1-A at 89). As discussed above, were the Estate to disregard these contractual duties of cooperation and extinguish its claims against Feuer and Valley Anesthesiology, Plaintiffs may be irreparably harmed. This is not to say that the Estate must continue to incur the costs of pursuing the claims itself. The Plan Document states that the Estate agrees "to assign to the plan all rights of recovery against third parties, to the extent of the reasonable value of services and benefits the plan provided." (*Id*.). Were the Estate to make such an assignment, the Estate could likely freely dismiss and/or settle whatever remaining rights of recovery it has against Defendants.

### C. Balance of Equities/Public Interest.

The Court must also weigh whether "the balance of equities tips in [Plaintiffs'] favor" and whether "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (2008). In this case, the Estate's personal representative, Jennifer Lancaster, is also a plaintiff in her individual capacity in the state court tort action. (Doc. 4, Ex. 2-C at 1). It appears that she stands to recover a greater amount in her individual capacity by opportunistically extinguishing the Estate's claims. (*See* Doc. 37-1, ¶ 9). Although such opportunistic behavior may be appropriate in some situations, in this case, the Plan's rights to subrogation may thereby be extinguished. Accordingly, the balance of equities weighs in Plaintiffs' favor. The Court further finds that enjoining the Estate from settling its claims against Feuer and Valley

- 6 -

1 Anesthesiology or dismissing itself from the state court action is in the public interest.

## CONCLUSION

For the reasons discussed above, Plaintiffs have established that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs' Renewed Application for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. 37) is **granted in part.**

2. The Estate is enjoined from dismissing its claims against Feuer and Valley Anesthesiology in *Lancaster, et al. v. Feuer, et al.*, CV2010-001614 except for its rights to recovery above and beyond the reasonable value of services and benefits the Plan provided to Lancaster.

3. The Estate is enjoined from accepting any settlement of its claims against Feuer and Valley Anesthesiology in *Lancaster, et al. v. Feuer, et al.*, CV2010-001614 that does not fully compensate or reimburse the Plan without the Plan's written approval.

4. Plaintiffs shall, pursuant to Federal Rule of Civil Procedure 65(c), post a $40,000 bond as security for this temporary restraining order, which shall not become effective unless and until Plaintiffs post bond.

DATED this 30th day of May, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge