**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norstan Incorporated, d/b/a Black Box Network Services; et al., <br><br>             Plaintiffs, <br><br> vs. <br><br> Jennifer N. Lancaster, in her capacity as Personal Representative of the Estate of James Joseph Lancaster; et al., <br><br>             Defendants. | No. CV-12-481-PHX-GMS <br><br> **ORDER** |

Pending before the Court are four motions filed by Defendants: 1) Defendants' Motion to Dismiss Defendants Jennifer Lancaster and Estate of Joseph Lancaster (Doc. 32); 2) Defendants' Motion to Dismiss the Lawyer Defendants (Doc. 33); 3) Defendants' Request for Summary Disposition of Motion to Dismiss (Doc. 44); and 4) Defendants' Motion for Leave to Show Cause Why Preliminary Injunction Should Not Issue and Motion for Reconsideration (Doc. 50). For the reasons discussed below, the motions are denied.

**BACKGROUND**

This case involves three actions related to the health care costs of decedent Joseph

Lancaster: the instant action in this Court, a state court tort action, and a state court probate action regarding Lancaster's Estate. Joseph Lancaster was a member of an ERISA health care plan (the "Plan") that he obtained through his employer, Plaintiff Norstan, Inc. (Doc. 4 at 2). On May 15, 2009, Mr. Lancaster underwent a medical procedure at Banner Heart Hospital and suffered injury, resulting in his total incapacitation. (*Id*. at 6). He was in a near vegetative state for months. (Doc. 20 at 2). On January 20, 2010, a medical malpractice suit was filed on his behalf by his guardian *ad litem* in Maricopa County Superior Court (the "state court tort action"). (Doc. 20 at 2). On September 7, 2010, Mr. Lancaster died. (Doc. 4 at 6). Between May 11, 2009 and Lancaster's death, the Plan paid $1,144,862 for medical services provided to him.

On December 16, 2010, an amended complaint was filed in the state court tort action. (Doc. 20-2, Ex. 1). The amended complaint apparently asserts survivor and wrongful death claims on behalf of Lancaster's Estate, parents, and four adult children— Jennifer, Candice, Christy, and Joseph Lancaster. Jennifer has been appointed as the Estate's Personal Representative and is therefore involved in the state court action in both an individual and representative capacity. The complaint names Jonathan A. Feuer, M.D., Valley Anesthesiology Consultants, Ltd., and the Banner Heart Hospital as defendants. (*Id*.). At some point, all plaintiffs in the state court tort action, including the Estate, entered into a settlement agreement (the "First Settlement"). Although the terms of the First Settlement have not been provided to the Court, it apparently purports to extinguish the plaintiffs' claims against the Hospital, but does not affect their claims against Feuer or Valley Anesthesiology.

On March 8, 2012, Plaintiffs Norstan and Black Box Network Services Employee Health Plan filed the Complaint in the instant action, bringing a claim against the Estate for breach of contract. (Doc. 1). The Complaint also brings claims against the Estate and its counsel for a declaratory judgment pursuant to 29 U.S.C. § 1132(a)(3), constructive trust, and injunctive relief. (*Id.*). Also on March 8, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief. (Doc. 4). In this motion, Plaintiffs asked the Court to 1) enjoin the Estate from dismissing itself as a party with regards to the remaining claims in the state court action; and 2) order the preservation and placement in trust of the Plan's reimbursement interest of $1,144,862 from any settlement that the Estate and/or its representative and attorneys may receive from the state court action. (Doc. 4).

The Court initially denied Plaintiffs' TRO motion. Plaintiffs had argued that unless the Court enjoined the Estate from dismissing itself as a party in the state court tort action, the Plan's subrogation rights in the Estate's recovery would be extinguished and that Plaintiffs would thereby suffer irreparable harm. At that time, however, the probate court had not yet granted the Estate's motion for leave to dismiss itself in the tort action, nor had Plaintiffs moved to be dismissed from the tort action. Moreover, the Parties stipulated at the TRO hearing that the funds from the First Settlement would be held in trust pending the outcome of this action. The Court—noting the substantial likelihood that either the probate court might deny the defendants' motion, or the Estate might elect not to dismiss itself from the tort action and/or assign any interest in its claims to Plaintiffs—held that Plaintiff had not yet demonstrated that it was likely to suffer

1
2
irreparable harm absent injunctive relief and denied the TRO motion without prejudice. (Doc. 29).

3
4
5
6
7
8
9
10
11
12
On May 11, 2012, Plaintiffs filed a Renewed Application for Temporary Restraining Order. (Doc. 37). Plaintiffs provided evidence that the Estate had decided to settle its remaining claims in the state-court action (the "Second Settlement")[1] without the Plan's approval. In addition, Plaintiffs provided evidence that the probate court had granted the Estate leave to dismiss itself in the tort action, and that the Estate had failed to respond to Plaintiffs' request that the Estate assign its rights to the Plan. The Court therefore granted Plaintiffs' motion for a TRO and ordered Defendants to show cause why the TRO should not stay in effect as a preliminary injunction. (Doc. 48).

13
14
15
16
17
18
19
20
Defendants now contend that the Estate and its personal representative should be dismissed from this action for lack of jurisdiction. (Doc. 32). In addition, several of defendants move to dismiss the claims against them for failure to state a claim. (Doc. 33). Defendants also contend that the TRO should not remain in effect as a preliminary injunction, and ask that the Court reconsider its decision to grant Plaintiffs' application for a TRO. (Doc. 50).

21
22
23
24
**DISCUSSION**

**I.      Motion to Dismiss Defendants Jennifer Lancaster and Estate of Joseph Lancaster**

25
26
Defendants contend that the court lacks subject matter jurisdiction over the Estate

27
28
---

[1] The Parties have stipulated that, like the proceeds from the First Settlement, any proceeds from the Second Settlement will be held in trust pending the outcome of this action. (Doc. 35 at 2).

- 4 -

and its personal representative, Jennifer Lancaster, "because there is no case or controversy" between these defendants and Plaintiffs. (Doc. 32 at 3). Title 29 U.S.C. § 1132(a)(3) states that:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary [of an ERISA health care plan] (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiffs are apparently the fiduciaries of the Plan. And the Estate now holds Lancaster's rights and responsibilities as a Plan beneficiary. Plaintiffs may therefore bring suit in this Court against the Estate to enforce the terms of the Plan. *See id.*

Under the terms of the Plan, "if a covered person receives a benefit payment from the plan for an injury caused by a third party, and the covered person later receives any payment for that same condition or injury from another person, organization or insurance company, the plan has the right to recover any payments made by the plan to the covered person." (Doc. 4, Ex. 1-A at 88). A "covered person" is defined by the Plan to include "any person acting on behalf of the covered person, including . . . the covered person's estate." (*Id.*). It appears, therefore, that the Plan, which allegedly paid $1,144,862 for medical services provided to Lancaster, may have subrogation rights over payments made by Lancaster's health care providers to the Estate for injuries the health care providers caused Lancaster. Moreover, under the Plan, the Estate is not to "accept any settlement that does not fully compensate or reimburse the plan without its written approval." (Doc.

4, Ex. 1-A at 89). The Estate, however, has agreed to a memorandum of settlement stating settlement terms with Feuer and Valley Anesthesiology in the state-court tort action without the Plan's approval. (*See* Doc. 50-1). In this memorandum, the Estate apparently agrees that it will dismiss its claims against Feuer and Valley Anesthesiology and will "request that the dismissal be with prejudice." (*Id*. at ¶ 3).

Defendants contend that there is no controversy between the Estate and the Plan because the Estate disclaimed any rights to settlement proceeds as part of the settlement agreement. (Doc. 32 at 3–4). In other words, Defendants contend that because the Estate agreed to dismiss its claims for $0, there is no settlement over which the Plan can exercise its subrogation rights or for which the Plan can give written approval. (*See id.*). That the Estate has agreed to settle its claims for nothing, however, does not extinguish the Plan's right to approve or disapprove of that settlement. (*See* Doc. 4, Ex. 1-A at 89). Indeed, the provision requiring written approval appears to exist for the very purpose of stopping beneficiaries like the Estate from extinguishing claims which they undervalue.

Defendants further contend that there is no controversy between the parties because the settlement payments from Lancaster's health care providers are being held in trust and "will not be disbursed without agreement of the parties, or court order." (Doc. 32 at 3). The Parties, however, dispute both the amount of settlement between the parties to the state-court action and the allocation of the settlement between the Plan and the plaintiffs in the state court action. A controversy therefore exists between the Estate and the Plan, and the Plan's claims in this action will not be dismissed for lack of subject matter jurisdiction.

## II.     Motion to Dismiss for Failure to State a Claim

On April 30, 2012, Defendants Mathew Dana, Mark Andersen, Samantha Garber, Warren Levenbaum, Steven Cohen, and Geoffery Trachtenberg (the "Lawyer Defendants") moved to dismiss Plaintiffs' claims against them for failure to state a claim. (Doc. 33). The Parties, however, have since stipulated to the dismissal of the Lawyer Defendants, and the Court has dismissed them from this action. (Docs. 35, 38). The Court will therefore deny the Lawyer Defendants' motion as moot.

## III.     Preliminary Injunction

Defendants moved for reconsideration of the Court's TRO determination and the Court granted Defendants a hearing to show cause why the TRO should not become a preliminary injunction. (Doc. 50). A plaintiff must establish four elements in order to be granted a preliminary injunction, including "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat't Res. Def. Council,* 555 U.S. 7, 22 (2008), *see* FED. R. CIV. P. 65 (emphasis in original). In granting Plaintiffs' request for a TRO, the Court determined that Plaintiffs had established these four elements. (Doc. 48). The only basis provided by Defendants in their written motion, however, on which they urge the Court to reconsider is their recharacterization of the Settlement Memorandum in the state-court action as a final settlement of their remaining claims.

At the time the Court entered the TRO in this action, Defendants contended that the Settlement Memorandum signed by the Estate's representative was essentially an

agreement to settle the state-court action in the future and that the parties had not formally settled the case. (*See* Doc. 50 at 2). Defendants now contend that the Settlement Memorandum is itself the formal settlement agreement between the parties, and that "[b]ecause there is a settlement in place, the Court cannot enjoin a completed act." (*Id.*). The Settlement Memorandum, however, states that the parties to the state-court action "will execute formal settlement documents at a later date," that "[t]he formal settlement documents will include a full and complete release of defendants," and that "[a]t such time as a formal settlement agreement is executed, the above-captioned matter will be dismissed with prejudice." (Doc. 50-1 at 1, 4). The Settlement Memorandum does not, therefore, appear to itself be a formal settlement agreement.

At the preliminary injunction hearing, Defendants argued for the first time that the Plan documents provided by Plaintiffs may be defective. Defendants accordingly requested that the Court delay entry of the preliminary injunction and first give Defendants the opportunity to conduct further discovery into whether Plaintiffs have indeed failed to produce binding Plan documents. At the hearing, Defendants conceded that should the documents produced by Plaintiffs be found to be invalid, they are unsure how this would affect the Plan's causes of action against the Estate. Accordingly, their argument is thusfar no more than speculation and does not call into question the Court's previous determination that Plaintiffs are likely to succeed on the merits.

In short, Defendants have not provided the Court with any valid basis on which to reconsider its determination that Plaintiffs are likely to succeed on the merits, are likely to suffer irreparable harm without an injunction, that the balance of equities tips in their

favor, and that an injunction is in the public interest. *See Winter*, 555 U.S. at 22. The Court will deny Defendants' motion for reconsideration without prejudice and the TRO will remain in effect as a preliminary injunction.

### CONCLUSION

A justiciable controversy exists between the Plan and the Estate. Given the Parties' May 11, 2012 Stipulation, the Lawyer Defendants' motion to dismiss for failure to state a claim is moot. Plaintiffs have met the preliminary injunction requirements set forth in *Winter*.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion to Dismiss Defendants Jennifer Lancaster and Estate of Joseph Lancaster (Doc. 32) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Dismiss the Lawyer Defendants (Doc. 33) is **denied as moot.**

**IT IS FURTHER ORDERED THAT** Defendants' Request for Summary Disposition of Motion to Dismiss (Doc. 44) is **denied as moot.**

**IT IS FURTHER ORDERED THAT** Defendants' Motion for Leave to Show Cause Why Preliminary Injunction Should Not Issue and Motion for Reconsideration (Doc. 50) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED THAT** the temporary restraining order entered by the Court on May 30, 2012 (Doc. 48) shall remain in effect as a preliminary injunction pending final disposition of this matter and that the $40,000 bond filed by Plaintiffs will serve as security for both the temporary restraining order and the preliminary injunction. The Estate is enjoined from dismissing its claims against Feuer and Valley

Anesthesiology in *Lancaster, et al. v. Feuer, et al.*, CV2010-001614 except for its rights to recovery above and beyond the reasonable value of services and benefits the Plan provided to Lancaster. The Estate is also enjoined from accepting any settlement of its claims against Feuer and Valley Anesthesiology in *Lancaster, et al. v. Feuer, et al.*, CV2010-001614 that does not fully compensate or reimburse the Plan without the Plan's written approval.

Dated this 3rd day of August, 2012.

G. Murray Snow
United States District Judge