WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norstan Incorporated, d/b/a Black Box Network Services; et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>Jennifer N. Lancaster, in her capacity as Personal Representative of the Estate of James Joseph Lancaster; et al.,<br><br>                    Defendants. | No. CV-12-00481-PHX-GMS<br><br>**ORDER** |

        Pending before the Court are Motions for Summary Judgment from Plaintiffs (Doc. 109) and Defendants (Doc. 100).  For the following reasons, Plaintiffs' Motion is granted and Defendants' Motion is denied.

## BACKGROUND

        Plaintiffs in this action are fiduciaries of a self-funded employee welfare ERISA plan (the "Plan"), in which James Joseph Lancaster participated.  (Doc. 109 at 2.)  The Plan provides for payment of a covered person's medical expenses but grants the Plan a right of subrogation and reimbursement in the event that a third party is legally responsible for the payment of the medical expenses paid by the Plan.  (*Id.* at 3; Doc. 110 at ¶ 7.)  The Plan provides that its right of subrogation is "first dollar recovery," giving it a right to recovery before payment for any other claim, including attorney's fees, general damages, or other damages other than medical expenses.  (Doc. 109 at 3; Doc. 110 at

¶ 8.)  The Plan also provides for reimbursement to the Plan if the third-party payment comes through the covered person's estate, anyone acting on behalf of the covered person, or anyone who has had benefits paid by the Plan.  (Doc. 110 at ¶ 7–8.)  The Plan requires that a covered person or their estate or representative must assign rights of recovery to the Plan and take other affirmative steps in order to avoid prejudicing the Plan's right to reimbursement.  (*Id.* at ¶ 9.)

Plaintiffs seek to recover $1,144,862.20 paid on behalf of Mr. Lancaster for injuries he suffered as a result of medical procedures at Banner Heart Hospital (the "Hospital").  (*Id.*)  Mr. Lancaster filed suit in Arizona state court, via his guardian *ad litem*, against the Hospital, Dr. Jonathan A. Feuer, and Valley Anesthesiology for recovery for his injuries (the "Malpractice Litigation").  Mr. Lancaster died before resolution of his claim (*Id.*; Doc. 101 at ¶ 13–14.), after which the Estate of Mr. Lancaster, through Defendant Jennifer N. Lancaster, as Personal Representative, was substituted into the Malpractice Litigation to pursue recovery.  (Doc. 109 at 2; Doc. 101 at ¶ 21, 23.)

On October 4, 2011, the Estate, along with Mr. Lancaster's surviving children and parents, who were asserting their own claims, settled a portion of the Malpractice Litigation with the Hospital (the "First Settlement").  (Doc. 110 at ¶ 19; *Id.* at Ex. A.)  The Plan was not consulted regarding the First Settlement.  (*Id.* at ¶ 22.)  After the First Settlement, the Personal Representative of the Estate asked for approval from the Probate Court to have the Estate dismissed from the Malpractice Litigation.  (Doc. 117 at ¶ 24.)  The Plan objected to the Estate being dismissed from the Malpractice Litigation on the grounds that it would impair the Plan's right to reimbursement.  (Doc. 110 at ¶ 25.)  The Plan also filed the instant lawsuit for breach of contract, recognition of a constructive trust, and declaratory and injunctive relief, all pursuant to Section 502(a)(3) of ERISA.  (Doc. 1.)  The Plan also filed a motion for a Temporary Restraining Order (TRO) to enjoin the Estate from dismissing itself from the Malpractice Litigation and to preserve in trust from any settlement proceeds the Plan's reimbursement interest in $1,144,862.20.

(Doc. 37.)  As a stipulation filed on March 8, 2012 before this Court, Defendants agreed to sequester any and all settlement proceeds recovered or to be recovered in the Malpractice Litigation.  (Doc. 35 at ¶ 2.)

On April 23, 2012, the Estate, along with Mr. Lancaster's surviving parents and children, entered into a preliminary settlement memorandum with Dr. Feuer and Valley Anesthesiology in the Malpractice Litigation (the "Second Settlement"), which provided the basic terms of the agreement but stated that "formal settlement documents" would be executed at a later date.  (*Id*. at ¶ 27–28.)  On May 1, 2012, the Plaintiffs contacted the Defendants to request that they recognize the Plan's right of recovery against third parties, and formalize this assignment of interest so that the Plan could "intervene in the [Malpractice Litigation] to pursue its right of recovery." (Doc. 117 at ¶ 29; Doc. 110 at ¶ 29.)  The next day, counsel for Defendants informed Plaintiffs that the Malpractice Litigation had settled.  (Doc. 117 at ¶ 30; Doc. 110 at ¶ 30.)

On May 30, 2012, the Court granted Plaintiffs' renewed request for a TRO (Doc. 48) preventing the Estate from dismissing its claims in the Malpractice Litigation and enjoining the Estate from accepting any settlement offer that does not fully compensate the Plan without the Plan's written approval.  (Doc. 48 at 7.)  On August 3, 2012, the Court ruled that the TRO should remain in effect as a Preliminary Injunction and that the Estate was enjoined from dismissing its claims against Feuer and Valley Anesthesiology in the Malpractice Litigation, as well as from accepting any settlement of its claims against Feuer and Valley Anesthesiology that does not fully compensate the Plan without the Plan's written approval.  (Doc. 62 at 9 -10.)  Defendants challenged the Preliminary Injunction in the Ninth Circuit on the grounds that the Court did not have jurisdiction and the Estate was not a "covered person" under the terms of the Plan.  The Ninth Circuit affirmed the Court's decision." (Doc. 91-2 at 3.)

Both parties have now moved for summary judgment.  Plaintiffs seek equitable relief in the amount of $1,144,862.20, plus costs, interest and attorneys' fees.  Defendants seek to have this action dismissed.

**DISCUSSION**

**I.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).  Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (original emphasis omitted) (quoting *Anderson*, 477 U.S. at 250).

**II.    Analysis**

There are no major facts in dispute.  Section 502(a)(3) allows an ERISA plan to obtain appropriate equitable relief to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3).[1]  Equitable relief for reimbursement under § 502(a)(3) does not include "personal liability" for the benefits conferred by a plan to a participant, but does include rights to reimbursement of "specifically identifiable funds that were within the possession and control of the [beneficiaries]."  *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362–63 (2006) (internal citations omitted).  *Sereboff* held that where, as part of an ERISA plan, a beneficiary agrees to convey funds to the plan before the funds are acquired, "the familiar rule of equity" applies to make the beneficiary "a trustee as soon as he gets title

---

[1] During her argument for permission to dismiss the Estate from the Malpractice Litigation, the Estate's Personal Representative argued that to gain relief, the Plan would need to seek equitable relief pursuant to Section 502(a)(3) of ERISA. (Doc. 46-1 at 19).

to" the funds.  *Id*. at 363–64.

Here, Mr. Lancaster entered into the Plan agreeing to reimburse the Plan for medical expenses from any third-party recovery gained by Mr. Lancaster, by Mr. Lancaster's representatives operating on his behalf, or by his estate.   (Doc. 109 at 8.) The Plan's subrogation provision states:

> If a covered person receives a benefit payment from the plan for an injury caused by a third party, and the covered person later receives any payment for the same condition or injury from another person, organization or insurance company, the plan has the right to recover payments made by the plan to the covered person.

(Doc. 110 at ¶ 6.)  The Plan defines "covered person" as:

> [A]ny individual who at the time an eligible expense is incurred is covered under the plan and for which the plan is obligated to provide coverage, and (2) any individual who has had benefits paid by the plan. Covered person also includes any person acting on behalf of the covered person, including but not limited to the covered person's attorney and the covered person's estate.

(*Id*. at ¶ 7.)  The text of these provisions is not in dispute.  (Doc. 117 at ¶ 7–8.)

However, Defendants argue that the Estate is not bound by the Plan because the Estate itself did not enter into any agreement with the Plan.  (*See, e.g.*, Doc. 100 at 5.) Defendants argue that under contractual principles, "a contract cannot bind a nonparty." (*Id*. at 10 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).)[2]   This argument misses the mark.  The language of the Plan bound Mr. Lancaster as well as his estate to reimburse the Plan in the event of recovery.  It is well established law that "parties to a contract bind not only themselves but their personal representatives," binding those who administer their estates after their death.  *U.S. ex rel. Wilhelm v. Chain*, 300 U.S. 31, 35 (1937).  Even more compelling is that the Ninth Circuit rejected

---

[2] Defendants also argue that Minnesota contract law applies to the Plan in arguing that the Estate is not bound by the Plan.  However, Minnesota law is in accord with ERISA and nothing particular about Minnesota contract law forbids the Estate from being bound by the Plan.

this very argument from Defendants when Defendants appealed this Court's granting of the Preliminary Injunction.  (Doc. 91.)   The Ninth Circuit's decision stated that Defendant's argument that the Estate is not a "covered person" under the terms of the Plan was "without merit."  (Doc. 91-2 at 2.)  The decision quoted the language above and stated that "the plan documents' definition of 'covered person' clearly includes the Estate."  (*Id*. at 3.)

Because the Estate is a "covered person" under the Plan, the question then becomes whether or not there are "specifically identifiable funds" "within the possession and control of the [beneficiary]" to reimburse the Plan for its payment of medical expenses.  *Sereboff*, 547 U.S. at 362–63.  Defendants have already obtained funds from the Hospital as part of the First Settlement, and have agreed to hold those funds in trust.  (Doc. 35.)  The Second Settlement with the medical providers has yet to be finalized,[3] but attaching an equitable lien to specific future funds yet to be acquired by the Estate is in harmony with the equitable relief available under the Plan.  (Doc. 115 at 29.)   The equitable relief agreed to in the Plan, and approved in *Sereboff*, applies to "any payment for the same condition or injury" from a third party, past or present.  (Doc. 110 at ¶ 6.) *Sereboff* forbade ERISA plans from attaching "personal liability for a contractual obligation to pay money."  *Sereboff*, 547 U.S. at 363.  An ERISA plan is allowed to seek "its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [beneficiary's] assets generally"  *Id*.  However, *Sereboff* explicitly held that "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed."   547 U.S. at 366.  This follows "the same 'familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing.'"  *Id*. at

---

[3] The Second Settlement purports to disclaim the Estate's interest in the Second Settlement funds, which would thus, at least theoretically, disqualify the Plan from participation in the Second Settlement.  (*Id*. at 30.)  This aspect of the Second Settlement Agreement is in violation of the Estate's contractual obligations to the Plan (Doc. 110 at ¶ 6–7) and has already been enjoined by the Court's order (Doc. 62 at 9–10).

367 (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)).  In *Sereboff*, this allowed an ERISA plan to "rely on a 'familiar rule of equity' to collect for the medical bills it had paid by following a portion of the recovery 'into the [beneficiary's] hands' 'as soon as the settlement fund was identified,' and imposing on that portion a constructive trust or equitable lien." *Id*. at 364 (quoting *Barnes*, 232 U.S. at 123).  The Plan cannot be granted a judgment to be executed generally upon any assets acquired by the Estate, but can be granted an equitable lien over an identified sources of funds to be paid out for the "same condition or injury" from third parties.  (Doc. 110 ¶ 6.)  Therefore, an equitable lien is available to the Plan against pending settlements or judgments in the Malpractice Litigation.

In their motion, Defendants acknowledge but do not challenge the amount of $1,144,862.20 claimed by Plaintiffs for medical expenses paid by the Plan.  (Doc. 100 at 4.)  The Plan's right to reimbursement is also explicitly "first dollar recovery," meaning that its right overrides payment of any other claims or fees, including attorneys' fees.  (Doc. 110 at ¶ 10.)  Because the Second Settlement is not yet final, and to ensure that sufficient funds are available to satisfy Plaintiffs' lien, the Court's Preliminary Injunction (Doc. 62) will remain in effect.  Therefore,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 109) is **granted** in part.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 100) is **denied**.

**IT IS FURTHER ORDERED** granting Plaintiffs an equitable lien in the amount of $1,144,862.20 over any settlements or judgments obtained by the Estate of Mr. Lancaster from *Lancaster, et al. v. Feuer, et al.*, CV2010-001614.

**IT IS FURTHER ORDERED** maintaining the Court's Preliminary Injunction (Doc. 62) requirement that the Estate not dismiss its claims in the *Lancaster, et al. v. Feuer, et al.*, CV2010-001614, and that Defendants receive written approval from the Plan of any settlement with Dr. Feuer and Valley Anesthesiology that does not fully

satisfy the Plan's equitable lien.

Dated this 25th day of June, 2014.

G. Murray Snow
United States District Judge